# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | MEMORANDUM DECISION AND ORDER |
|---|---|
| Plaintiff, | |
| v. | Case No. 2:21-cr-00501-DAK-CMR-5 |
| JASON MICHAEL BATES, | District Judge Dale A. Kimball |
| Defendant. | Magistrate Judge Jared C. Bennett |

Defendant Jason Michael Bates ("Mr. Bates") moved this court to review his federal custody or, in the alternative, to waive federal custody so that he could be remanded into the custody of the State of Utah to begin serving a sentence that resulted from violations of Mr. Bates's state probation conditions.[1] For the reasons stated below, Mr. Bates's motion is denied because this court lacks authority to grant the relief that he seeks.

## INTRODUCTION

A grand jury indicted Mr. Bates, among others, for conspiracy to both distribute alpha-Pyrrolidinohexanophenone and launder money.[2] The federal indictment caused the issuance of a federal arrest warrant,[3] and federal authorities arrested Mr. Bates shortly thereafter.

---

[1] ECF No. 329.

[2] ECF No. 11.

[3] ECF No. 18-4.

At Mr. Bates's initial appearance, the court detained him in the custody of the United States Attorney General pending the resolution of this action.[4] Of the many factors contributing to Mr. Bates's detention was the fact that he was on probation with the State of Utah at the time of the alleged federal offense in this action.[5]

While his federal action was pending, state authorities issued *writs ad prosequendum* to bring Mr. Bates into state court to answer for violations of his state probation and for new state charges that Mr. Bates received while in custody.[6] Eventually, Judge Paul B. Parker of Utah's Third District Court sentenced Mr. Bates to a term of imprisonment at the Utah State Prison.[7] Although Mr. Bates's state sentence was to begin immediately,[8] Mr. Bates remained in federal custody due to this court's earlier detention order.

During a status conference with Mr. Bates on January 3, 2024, he voiced his desire to leave the holding facility where he is currently housed in federal custody to go to the Utah State Prison, where he believes he would have better conditions. At that hearing, the court did not hear any opposition from the United States to that request and assumed—inaccurately, it turns out—that Mr. Bates's request would be unopposed. To adequately memorialize Mr. Bates's seemingly unopposed motion, the court invited Mr. Bates to file a motion so that his request would be clear

---

[4] ECF No. 57.
[5] ECF No. 57 at 3.
[6] ECF No. 329-1; 329-2; 329-3; 329-4.
[7] ECF No. 329-1 at 2; 329-2 at 2.
[8] ECF No. 329-1 at 2; 329-2 at 2.

on the docket. Mr. Bates did so, and the court held a hearing at which it intended to remand Mr. Bates to state custody to begin serving his state sentence.[9]

However, the United States opposed the transfer at the hearing. The hearing made clear to the court that there were issues about which the court was uninformed regarding the propriety of granting Mr. Bates's request, and, therefore, the court ordered supplemental briefing.[10] The United States subsequently filed its opposition to Mr. Bates's motion[11] to which Mr. Bates replied.[12] Now, being fully informed, the court issues this order denying Mr. Bates's motion because this court lacks the authority to order the relief that Mr. Bates seeks.

I. **Separation of Powers Principles Preclude the Judicial Branch from Ordering Mr. Bates Into State Custody.**

Although transferring Mr. Bates from federal to state custody may seem like a rather pedestrian order, the truth is that such a decision is fraught with peril for the jurisdictionally unwary because such a decision invokes fundamental separation of powers issues between the federal judicial and executive branches *and* between the federal and state executive branches. "Normally, the sovereign which first arrests an individual acquires priority of jurisdiction for purposes of trial, sentencing, and incarceration."[13] The sovereign with priority of jurisdiction (also called, "primary custody") over a defendant may exercise its discretion to relinquish that

---

[9] ECF No. 330.

[10] *Id.*

[11] ECF No. 333.

[12] ECF No. 335.

[13] *United States v. Warren*, 610 F.2d 680, 684-85 (9th Cir. 1980).

primary custody to another sovereign,[14] but "[t]his discretionary election is an executive, and not a judicial, function."[15] Indeed, as the Court of Appeals for the Tenth Circuit has stated, "when a prisoner violates the criminal statutes of two different sovereigns, the determination of custody and service of sentence between them is a matter of comity to be resolved by the *executive* branches of each sovereign."[16] Therefore, when it comes to deciding whether to relinquish "priority of jurisdiction" over a defendant, the executive branch—not the judiciary—is the exclusive decisionmaker.[17]

No party disputes that Mr. Bates is in primary federal custody. Given that the federal executive branch has exclusive authority to determine whether to relinquish primary custody over Mr. Bates to the State of Utah, this court cannot meddle. This is especially true where, as here, the executive branch expressly opposes Mr. Bates's transfer from primary federal custody to state custody to serve his state sentence.[18] Given these fundamental separation of powers principles, this court cannot grant the relief that Mr. Bates seeks here.

---

[14] *Id.* at 685.

[15] *Id.*

[16] *Hernandez v. United States Att'y Gen.*, 689 F.2d 915, 917 (10th Cir. 1982) (emphasis added); *see also United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000) (per curiam) (reversing district court for finding that state court judge had authority to relinquish primary jurisdiction over defendant to the United States because "[a]s the sovereign that first arrested Dowdle, the state had primary jurisdiction which it could 'elect under the doctrine of comity to relinquish [] to [the United States],' but the 'discretionary election is an executive, and not a judicial function.'" (quoting *Warren*, 610 F.2d at 685)).

[17] For this reason, when a federal court enters an order of detention against a defendant in primary federal custody, Congress requires the court to "direct that the person be committed to the custody of the Attorney General." 18 U.S.C. § 3142(i)(2); *see also cf. Hernandez*, 689 F.2d at 917 ("[T]he place of a federal prisoner's confinement is a matter vested in the discretion of the Attorney General or his authorized delegate pursuant to 18 U.S.C. § 4082.").

[18] ECF No. 333.

4

Nevertheless, Mr. Bates argues that this court can order Mr. Bates's transfer to state custody over the United States's objection under 18 U.S.C. § 3142(f).[19] Specifically, Mr. Bates syllogistically argues: (1) 18 U.S.C. § 3142(f) allows the court to revisit its detention decision when new information comes to light that "has material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of the person . . . and the safety of any other person and the community"; (2) the availability of the option to release Mr. Bates to the Utah State Prison is new information that will reasonably assure his appearance in federal court and community safety because Mr. Bates will remain in custody, and the United States can use a writ to borrow Mr. Bates from state custody to get him to his federal hearings; and (3) therefore, the court can order Mr. Bates released to state custody over the United States' opposition because deciding detention or release belongs exclusively to the judiciary.

Although clever, this argument is unpersuasive. Even if a state prison sentence is new information, this court cannot "release" Mr. Bates to the state because Congress never intended 18 U.S.C. § 3142(f) to drastically alter traditional separation of powers principles between the federal judicial and executive branches. When determining Congress's intent, courts begin with the plain language of the statute.[20]

> To interpret a statute's plain language, "[w]e give undefined terms their ordinary meanings, considering both the specific context in which the word is used and the broader context of the statute as a whole." "It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'"[21]

---

[19] ECF No. 335 at 2-3.

[20] *Hooper v. City of Tulsa*, 71 F.4th 1270, 1282 (10th Cir. 2023).

[21] *Id.* (citations omitted).

Additionally, the court's "task is to interpret the words of the statute in light of the purposes Congress sought to serve."[22]

With these principles in mind, the court turns to the meaning of the word "release" in 18 U.S.C. § 3142(f). Because the Bail Reform Act of 1984[23] ("the Act") does not define "release,"[24] the court gives this undefined word its ordinary meaning by looking at its dictionary definition.[25] The *American Heritage Dictionary* defines "release" as, "to set free from confinement, restraint, or bondage; liberate."[26] Another definition, however, is "the relinquishment of a right, title, or claim to another."[27] The *Oxford English Dictionary* defines "release" similarly.[28]

The meanings of "release" is significant for purposes of the parties' arguments here because if the term means "to liberate from confinement," then the Act does not authorize a federal judge to "release" someone to state prison. However, if "release" under the Act merely means "to relinquish a right or claim" to Mr. Bates, then the Act could plausibly be read to authorize a federal judge to "release" Mr. Bates to the custody of another sovereign.

---

[22] *Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc.*, 764 F.3d 1199, 1231 (10th Cir. 2014).

[23] 18 U.S.C. §§ 3142 to 3156.

[24] 18 U.S.C. § 3156.

[25] *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) ("When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary." (citation and quotations omitted)).

[26] *Release*, THE AMERICAN HERITAGE DICTIONARY (2d college ed. 1985).

[27] *Id.*

[28] *Release*, OXFORD ENGLISH DICTIONARY (https://www.oed.com/dictionary/release_v1?tab=meaning_and_use#25970029, last visited Jan. 25, 2024).

But this is where the canons of statutory construction that require reading "release" in context and consistently with the Act's purpose become essential because the way the Act uses "release" cannot support Mr. Bates's preferred definition. One of Congress's expressed purposes for passing the Act was to, "address the alarming problem of crimes committed by persons *on release*."[29] Indeed, the Senate Judiciary Committee recognized that "[c]onsiderable criticism has been leveled at the Bail Reform Act in the years since its enactment because of its failure to recognize the problem of crimes committed by those on pretrial release."[30] Congress's use of the word "release" in explaining the Act's purposes clearly refers to a defendant being free from incarceration where he/she can choose to commit crime instead of merely being transferred into the custody of another jurisdiction where such a choice is curtailed.

Not surprisingly, Congress continues to use "release" in this fashion throughout the rest of the Act. For example, 18 U.S.C. § 3142(a) provides a judicial officer with two release options: (1) "personal recognizance"; or (2) "on a condition or combination of conditions." Transferring a federal defendant to state custody is clearly not a release on "personal recognizance" if that phrase is to have any meaning at all. Moreover, releasing a defendant on conditions makes no sense if that release is merely to the custody of another sovereign because the statutorily prescribed conditions become nonsensical. Indeed, section 3142(c)(1)(B) lists several conditions that a judge may include in a release order.[31] Conditions such as "maintain[ing] employment," "commenc[ing] an educational program," "abid[ing] by specified restrictions on personal

---

[29] S. Rep. No. 98-225, at 3 (1983) (emphasis added).
[30] *Id.* at 5.
[31] 18 U.S.C. § 3142(c)(1)(B).

associations, place of abode, and travel," just to name a few, would be meaningless if "release" merely meant that a federal court could release the defendant to another sovereign's custody. Tellingly, Congress did not list transferring a defendant to the custody of another sovereign as a possible "release" condition under the Act.[32]

Although this textual evidence of the meaning of "release" is more than enough to show that Congress did not intend that term to include transferring the defendant to another sovereign, the statute bears more evidence still. When a judicial officer decides to release a defendant under the Act, the judge must inform the defendant of "the penalties for violating a condition of release."[33] Additionally, the Act establishes the standards and procedure for revoking a defendant's pretrial release for violating his/her release conditions.[34] These provisions enforcing pretrial release conditions are rendered nonsensical if the federal defendant is merely being "released" to state custody because Congress intended release to imbue the defendant with the freedom to choose compliance with release conditions. If the defendant's choices violate those conditions, then the court can hold the defendant accountable by taking him/her into custody, among other things. Choosing to comply with conditions is hardly possible when the defendant is remanded to the custody of another sovereign.

Finally, nothing in the Act shows that Congress intended to change the well-established doctrine of comity discussed above between the judicial and executive branches relating to a defendant's custody. To the contrary, the Act clearly provides that when a judge *detains* a

---

[32] 18 U.S.C. § 3142(c)(1)(B).
[33] 18 U.S.C. § 3142(h)(2)(A).
[34] 18 U.S.C. § 3148.

defendant, the order of detention "shall direct that the person be committed to the custody of the *Attorney General* for confinement."[35] This mandate is important because it shows that Congress expressly placed the defendant's custody in the hands of the executive branch, not the judiciary, which is consistent with long-standing separation of powers principles that vest "the determination of custody and service of sentence . . . is a matter of comity to be resolved by the *executive branches* of each sovereign."[36] It is hard to imagine that Congress would have upset the traditional separation of powers between the judicial and executive branches implicitly through a textually unsound interpretation of the word "release." Consequently, this court cannot "release" Mr. Bates to the State of Utah even with new information (i.e., a new state prison sentence) because neither separation of powers principles nor the Act authorizes such a transfer.

## CONCLUSION AND ORDER

For the reasons stated above, this court lacks authority to release Mr. Bates to the Utah State Prison. Therefore, Mr. Bates's motion[37] is DENIED.

IT IS SO ORDERED.

DATED this 26th day of January 2024.

BY THE COURT:

*/s/ Jared C. Bennett*

JARED C. BENNETT
United States Magistrate Judge

---

[35] 18 U.S.C. § 3142(i)(2) (emphasis added).

[36] *Hernandez*, 689 F.2d at 917 (emphasis added).

[37] ECF No. 329.