# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>JASON BATES, SERENE AL-ABBODI, and MAHDI AL-BAWI<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:21-CR-501-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on the United States's Motion to Strike Evidentiary Hearing and Submit for Ruling on the Defendant's Motion to Suppress Evidence Derived from Title III Surveillance of Telephone Communications [ECF No. 393]; Defendant Jason Bates's Motion to Suppress Evidence Derived from Title III Surveillance of Telephone Communications [ECF No. 346]; and Defendant Jason Bates's Notice and Motion for Appeal of Order [388] Denying Defendants' Renewed Motion to Compel Discovery [ECF No. 406]. The court held oral arguments on October 4, 2024. At the hearing, Jason Bates appeared and was represented by Scott C. Williams, Serene Al-Abbodi appeared and was represented by Mark J. Gregersen, Mahdi Al-Bawi appeared and was represented by Kristin McCaughey, and the United States was represented by Seth Nielsen and Vernon G. Stejskal. The court has carefully considered the parties' arguments and the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

Bates filed a Motion to Suppress Evidence Derived from Title III Surveillance of Telephone Communications, which was joined in by his co-defendants Al-Abodi and Al-Bawi. The court scheduled an evidentiary hearing because it is the court's regular practice to hold an evidentiary hearing on motions to suppress and have the parties brief the motion after the evidentiary hearing. Bates filed a Motion to Compel that was related to the Motion to Suppress so the court vacated the evidentiary hearing until Magistrate Judge Romero ruled on the Motion to Compel. After Magistrate Judge Romero denied Bate's Motion to Compel, the court re-set an evidentiary hearing on the Motion to Suppress because it is the court's standard practice.  The United States', however, filed the present Motion to Strike Evidentiary Hearing, arguing that no evidentiary hearing is necessary on a motion to suppress challenging the sufficiency of a Title III affidavit requesting authorization for wiretap surveillance.

Bates alleges that the affidavit in support of the wire intercept is insufficient to meet the necessity requirement for wiretap surveillance and the court should consider post-authorization conduct when determining whether the United States met the necessity requirement.

"Under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, wiretap applications are subject to a necessity requirement that is 'designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Portillo-Uranga*, 28 F.4th 168, 173 (10th Cir. 2022) (citations omitted).  "To obtain judicial authorization for a wiretap, the government must include in each application 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.'" *Id.* at 174 (quoting 18 U.S.C. §§ 2518(1)(c), 2518(3)(c)). "'Although the necessity requirement is intended to ensure that wiretaps are not used in situations where

traditional investigative techniques may achieve law enforcement purposes," the Tenth Circuit does "'not require investigative officers to "exhaust all other conceivable investigative procedures before resorting to wiretapping."'" *Id.* (quoting *United States v. Foy*, 641 F.3d 455, 464 (10th Cir. 2011)). "But officers need to explain the need for wiretaps with 'some degree of specificity' and provide facts related to the specific individuals targeted by the wiretap." *Id.* (citation omitted).

"Once a wiretap has been authorized, it is presumed proper and the defendant bears the burden of proving that a wiretap is invalid." *Id.* "The application and affidavit for wiretap authorization are subject to the requirements of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), and its progeny." *United States v. Green*, 175 F.3d 822, 828 (10th Cir. 1999). "If a wiretap affidavit omits material information that would vitiate either the necessity or the probable cause requirements had it been included, the resultant evidence must be suppressed." *Id.*

"Under *Franks*, a hearing on the veracity of the affidavit supporting a warrant is required if the defendant makes a substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause." *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997). "[T]he standards of 'deliberate falsehood' and 'reckless disregard' set forth in *Franks* apply 'to material omissions, as well as affirmative falsehoods.'" *Id.* (citation omitted). "The false statement or omission must, however, be 'necessary to the finding of probable cause' in order for the fruits of the search to be suppressed." *United States v. Tisdale*, 248 F.3d 964, 973 (10th Cir. 2001) (citing *Franks*, 438 U.S. at 155).

3

"To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.*

The United States argues that Bates has not met any of the requirements for a *Franks* evidentiary hearing to challenge the affidavit in support of the wiretap authorization. Bates makes traditional arguments regarding the alleged insufficiencies within the four corners of the affidavit. He also makes arguments about post-authorization conduct that he believes the court should consider as evidence that the contents of the affidavit were not genuine.

Bates's arguments that the affidavit failed to exhaust its more traditional investigative techniques, failed to identify the successes law enforcement had with traditional techniques, and did not accurately portray how easy it was for them to find Bates ignores the United States's goals with respect to the wiretap. The wiretap was not limited to getting information to arrest Bates. The United States sought to uncover the size and scope of the conspiracy Bates was a part of, the source of his drugs, and to discover the identities of fellow members of the organization who were skilled at evading detection from law enforcement through traditional investigative techniques. Law enforcement sought a wiretap on Bates, a member of the organization that they could readily identify, to obtain the identity of and information on the members they could not otherwise discover through traditional methods. Therefore, their successes with traditional investigative techniques with Bates are relevant only to the extent that they had an individual that could lead them to more information.

There is no case law prohibiting this type of request. The Tenth Circuit has held "on numerous occasions that the law enforcement goal of uncovering the size and scope of the

4

conspiracy may justify the authorization of the wiretaps," even where sufficient evidence already exists to arrest individual members of the conspiracy. *Foy*, 641 F.3d at 464-65.  Traditional investigative techniques do not need to be entirely unsuccessful to obtain a wiretap relating to a wider organization. It would unduly hamper law enforcement to require them to immediately arrest every member of an organization whom they might have enough information on to sustain an arrest.  The affidavit in this case may have left some information out with respect to Bates but he was not the only focus of the investigation. And the information Bates relies on is not material to authorizing a wiretap for the size and scope of the larger criminal organization, of which Bates was a small part. Bates claims that the government cast its investigatory net so wide that is was able to manufacture necessity.  But the source of Bates's drugs and the suppliers at that source level is not an unreasonable goal for investigators.  The affidavit was clear that there were targets of the investigation who were difficult to find because they were transient, members of the conspiracy were insulated from each other, and many used prepaid phones. Therefore, the confidential informants were having difficulties trying to infiltrate higher levels in the organization.  Bates's arguments do not contradict these material allegations in the affidavit with respect to the wider organization.

With respect to post-authorization conduct, Bates argues that the government's minimal use of the wiretap indicates that it was not actually necessary. In addition, Bates argues that a wiretap operator's decision to tip off Bates about the wiretap supports an inference that if the government's actions were unclean during the execution of the wiretap, its actions were also unclean in obtaining the wiretap.  The court disagrees that either of these allegations relate to whether the affidavit was sufficient to obtain wiretap authorization.  The court does not believe that limited use of the wiretap after authorization is an indication that the wiretap was not

necessary. The facts demonstrate that the wiretap and those that followed were successful, regardless of how much they were used. Moreover, the fact that the government has now prosecuted the wiretap operator who tipped Bates off about the wiretap would indicate that the wiretap operator was not acting in the government's interest. The wiretap operator was not part of the investigatory team seeking authorization. He had a limited administrative role. The court finds no connection between his actions and the parties seeking a wiretap.

Bates further claims that the government did not give adequate updates to Judge Shelby in connection with the wiretap. The 15-day report the government provided to Judge Shelby did not contain information about the wiretap operator's improper conduct. However, within six days of obtaining the information about the wiretap operator, the government moved to shut down the wiretap, and the government's application for a subsequent wiretap fully explained the situation with the wiretap operator. This conduct does not weigh on the validity of the original affidavit.

Bates also claims that a missing text demonstrates bad faith by the government. This assertion was debunked in connection with the motion to compel before Magistrate Romero. The government established that the discovery it sent to Bates did not crop out any texts. The cropped alteration occurred after the government turned the materials over in discovery. There is no actual evidence before the court that the government provided anything but accurate discovery since the beginning of the case.

The court concludes that Bates has not made a substantial preliminary showing that the affidavit contains deliberate falsehoods or material omissions that would negate the finding of probable cause to authorize the wiretap seeking information about the criminal enterprise in which Bates was operating. The court finds that none of Bates's assertions would have changed

Judge Shelby's determination that probable cause existed to authorize the wiretap. Accordingly, Bates is not entitled to an evidentiary hearing under *Franks* to test the validity of the wiretap warrant.

For these same reasons, the court finds that there are no grounds for Bates's Motion to Suppress. The affidavit in question meets the statutory requirements of establishing necessity. Bates attacks matters within the affidavit that would not change the probable cause analysis given that the stated goals of the wiretap were to discover more than just information on Bates. Success in traditional investigative techniques with respect to Bates and others in the organization who were easy to track and find, did not preclude the government from seeking a wiretap. The government need not exhaust all traditional investigative techniques before seeking a wiretap. The affidavit adequately outlines the circumstances and goals of law enforcement. The affidavit sufficiently outlined that the wiretap was needed to obtain information on the size and scope of the criminal organization or conspiracy Bates was a part of and the identities of sources and co-conspirators who were more successful at evading traditional investigative techniques. The affidavit explained how traditional investigative techniques would not fully work to expose the full extent of the conspiracy. Bates's claimed omissions are not material because they are irrelevant to the government's goals with respect to the wiretap. Therefore, the court concludes that Judge Shelby was within his discretion to authorize the Title III wire intercept based on the contents of the affidavit before him and none of the arguments Bates makes in attacking the affidavit would have changed his mind about authorizing the wiretap.

Moreover, although Bates argues that certain post-authorization conduct should cause the court to question law enforcement seeking the wiretap in the first place, the court notes that the wiretap and those that followed were successful. The co-defendants with which Bates is charged

in this case were not known at the time of the application, affidavit, and proposed Title III order in question.  They were identified through the challenged wiretap and subsequent wiretaps that followed the one in question.  The government was able to find Bates's source of supply, others in his tier of distribution, and the ultimate supplier.  There may have been a problem with a wiretap operator, but it resulted in the operator's conviction and did not deter law enforcement from further investigation.

Finally, Bates objects to Judge Romero's denial of his Renewed Motion to Compel seeking the prosecution file of the wiretap operator, Jose Araujo, and addressing claims about materials provided in discovery. Judge Romero's decision was thorough and well-reasoned. The court required the prosecutor in this case to review the Araujo file independently to determine if anything needed to be produced in compliance with Rule 16. The prosecutor confirmed that there is no evidence or information in the Araujo file to suggest that anyone had the ability to edit, alter, or delete any of the evidence obtained through the Title III wiretap.  Given his Rule 16 obligations, the court agrees that there is no evidence that there is anything in the file to produce.

Bates has not identified anything in the file he seeks.  He merely seeks to review the entire file.  This court agrees that his generalized request does not demonstrate materiality. Araujo's misconduct occurred after the wiretap was authorized.  Judge Romero correctly found that Bates failed to demonstrate an expressly exculpatory need for the contents of the Jose Araujo case file and characterized his arguments as unsupported speculation.

The court agrees that there is no credible evidence suggesting that any governmental actor tampered with any evidence.  Bates claims the government cropped two pictures, but it was established that the pictures were not cropped when they were provided to Bates in discovery. The court concludes that Bates has provided no basis for challenging Magistrate Judge Romero's

decision denying Bates's Renewed Motion to Compel. Therefore, the court upholds her order and denies the Renewed Motion to Compel.

## CONCLUSION

Based on the above analysis, the United States's Motion to Strike Evidentiary Hearing and Submit for Ruling on the Defendant's Motion to Suppress Evidence Derived from Title III Surveillance of Telephone Communications [ECF No. 393] is GRANTED; Defendant Jason Bates's Motion to Suppress Evidence Derived from Title III Surveillance of Telephone Communications [ECF No. 346] is DENIED; and Defendant Jason Bates's Notice and Motion for Appeal of Order [388] Denying Defendants' Renewed Motion to Compel Discovery [ECF No. 406] is DENIED.

Because the time under the Speedy Trial Act has been tolled due to the pendency of this motion, this matter currently has no trial date. Based on the complexity of this multi-defendant action and the volume of discovery, the court requests that the parties meet and confer about an appropriate trial setting.

DATED this 10th day of October 2024.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE